**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **CITY OF SELMA, ALABAMA;** | ) | |
| **WATER WORKS & SEWER BOARD** | ) | **MDL NO. 2873** |
| **OF THE CITY OF SELMA,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Master Docket No:   2:18-mn-2873-RMG** |
| | ) | |
| | ) | **JUDGE RICHARD GERGEL** |
| **v.** | ) | |
| | ) | **Civil Action No:** _2:24-cv-01383-RMG_ |
| **3M COMPANY (f/k/a Minnesota** | ) | |
| **Mining and Manufacturing Company);** | ) | |
| **AGC CHEMICALS AMERICAS INC.;** | ) | **COMPLAINT AND** |
| **AMEREX CORPORATION;** | ) | **JURY DEMAND** |
| **ARCHROMA U.S. INC.;** | ) | |
| **ARKEMA, INC.;** | ) | |
| **BASF CORPORATION;** | ) | |
| **BUCKEYE FIRE EQUIPMENT** | ) | |
| **COMPANY;** | ) | |
| **CARRIER GLOBAL CORPORATION;** | ) | |
| **CHEMDESIGN PRODUCTS, INC.;** | ) | |
| **CHEMGUARD, INC.;** | ) | |
| **CHEMICALS, INC.;** | ) | |
| **CHEMOURS COMPANY FC, LLC;** | ) | |
| **CHUBB FIRE, LTD;** | ) | |
| **CLARIANT CORP.;** | ) | |
| **CORTEVA, INC.;** | ) | |
| **DAIKIN AMERICA, INC;** | ) | |
| **DEEPWATER CHEMICALS, INC.;** | ) | |
| **DU PONT DE NEMOURS INC.** | ) | |
| **(f/k/a DOWDUPONT INC.);** | ) | |
| **DYNAX CORPORATION;** | ) | |
| **E.I. DU PONT DE NEMOURS AND** | ) | |
| **COMPANY;** | ) | |
| **JOHNSON CONTROLS, INC.;** | ) | |
| **KIDDE PLC;** | ) | |
| **NATION FORD CHEMICAL** | ) | |
| **COMPANY;** | ) | |
| **NATIONAL FOAM, INC.;** | ) | |
| **PERIMETER SOLUTIONS, LP;** | ) | |
| **THE CHEMOURS COMPANY;** | ) | |

**TYCO FIRE PRODUCTS LP, as**    )
**successor-in-interest to The Ansul**    )
**Company;**    )
**UNITED TECHNOLOGIES**    )
**CORPORATION;**    )
**UTC FIRE & SECURITY AMERICAS**    )
**CORP., INC. (f/k/a GE**    )
**Interlogix, Inc.),**    )
    )
        **Defendants.**    )

## COMPLAINT

COMES NOW, the Plaintiffs, by and through undersigned counsel, and alleges upon information and belief as follows:

## SUMMARY OF THE CASE

1.    The City of Selma, Alabama, ("Selma" or "City") a municipal corporation organized under Alabama law, and the Selma Water Works Board of the City of Selma ("WWBS"), a public corporation governed by a board of directors appointed by the Selma City Counsel, bring this action in its sovereign capacity against the Defendants alleging theories of trespass, nuisance, negligence, wantonness, fraudulent concealment, breach of warranty, and strict liability for environmental and economic injuries, contamination and unlawful incursion onto the Plaintiffs' land, surface and subsurface soil, sediment, natural resources, municipal and real property caused by releases of fluorinated Class B firefighting foams manufactured with synthetic per- and polyfluoroalkyl substances or chemicals (collectively and hereafter referred to as "PFAS").

2.    SWWB and the City source drinking water from groundwater in around Selma and Dallas County, Alabama. In this complaint, Plaintiffs' water supply will be referred to as "basins."

3.    In this complaint, the term ("PFAS") refers to a family of synthetic man-made chemicals and surfactants including but not limited to: Perfluorooctanoic acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), Perfluorohexanoic acid ("PFHxA"), Perfluoropentanoic acid ("PFPA"), Perfluoroheptanoic acid ("PFHpA"), Pentafluorobenzoic acid ("PFBA"), Perfluorobutanesulfonic acid ("PFBS"), Perfluorononanoic acid ("PFNA"), Perfluorodecacanoic acid ("PFDA") and Perfluorohexane Sulfonic Acid ("PFHS").

4.    In this complaint, the term Aqueous Film-Forming Foam ("AFFF") refers to any fluorinated firefighting foams that contains PFOS and/or PFOA (including any of their salt, ionic or acid forms and their precursors or degradation products) manufactured, sold or distributed by the Defendants for civilian, military and training applications worldwide.

5.    PFOS and PFOA are synthetic fluorinated compounds that are particularly useful for controlling and extinguishing aviation, marine, fuel, and other Class B fires because fluorine atoms have extremely persistent and stable physio-chemical properties.

6.    PFOS and PFOA are soluble in water, not easily biodegradable, and persistent in the environment. Both are known to be harmful to human health. When AFFF containing PFOS or PFOA is released into the environment; both compounds, their precursors and degradation products, can migrate into soil and groundwater. It has been shown that the bioconcentration and bioaccumulation of perfluorinated acids is directly related to fluorination.[1]

7.    AFFF is a specialized manufactured foam designed to extinguish petroleum-based fires. It has been used for decades by military and civilian firefighters to extinguish fires in training exercises and live-fire responses.

---

[1] Conder, J. M.; Hoke, R.A.; Wolf, W.D.; Russell, M.H.; Buck, R.C. Are PFCAs Bioaccumulative? A Critical Review and Comparison with Regulatory Criteria and Persistent Lipophilic Compounds. *Environ. Sci. Technol*. 2009, 42, 995-1003.

8.      PFOA and PFOS are extremely toxic, not easily biodegradable, persistent in the environment and pose a significant risk to animal and human health.

9.      Fire Departments have provided fire protection and response in Tarrant and surrounding areas for decades. Fire departments have used AFFF containing PFOS and PFOA in fire suppression and training activities for many years.

10.     During these activities, AFFF was used as directed by the manufacturer, which allowed PFOS and PFOA to enter the environment. When sprayed onto outdoor surfaces as intended, the compounds migrated through the soil and into the groundwater, thereby contaminating the water pumped into Plaintiff's water supply, as well as Plaintiff's municipal land.

11.     Airports and military bases operated by the Alabama Air National Guard and other branches of the military or municipal fire authorities have used fixed extinguishing systems and fluorinated AFFF foams containing PFOA and PFOS for decades. Municipal fire departments likewise use the AFFF foams on a regular and continual basis for training exercises and extinguishing certain fires.

12.     Potential release sites including fire training areas ("FTA's") and non-fire training areas where AFFF has been regularly used, stored, transported, and directly or indirectly discharged into the environment. In this case, the Defendants have distributed, manufactured and sold fluorinated AFFF foams to municipal fire authorities in and around the City of Selma, and it's basins.

13.     PFAS has been detected in Plaintiff's drinking water, Plaintiff's drinking water supply originates in ground water in around the Selma and Dallas County, Alabama. Contamination of these basins by PFAS is ongoing.

14.     It is probable that more widespread contamination has occurred. Given the extensive use of the fluorinated AFFF by military and civilian firefighters, upon information and belief, additional municipal owned property is likewise contaminated with these toxic compounds.

15.     Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFF with knowledge that it contained highly toxic and bio persistent PFASs, which would expose end users of the product to the risks associated with PFAS. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

16.     The Defendants failed to warn individuals, communities, municipalities, or states of the serious environmental, human, and animal toxicity concerns linked to the use and exposure to fluorinated AFFF foams.

17.     Because the Defendants knowingly placed defective and dangerously toxic fluorinated AFFF foams into the stream of commerce they are strictly liable to the Plaintiffs for causing the release of toxic PFAS compounds onto the City's municipal lands and its surface and subsurface soil.

18.     The Defendants sold, manufactured, and distributed AFFF containing fluorinated surfactants touting the superior firefighting performance for decades and deliberately chose not to warn end users or purchasers of the potential environmental or human toxicity concerns linked to fluorinated compounds.

19.    Because the Defendants negligently caused the release of toxic PFAS compounds onto the City's municipal lands and its surface and subsurface soil they are all jointly and severally liable.

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction under federal diversity, pursuant to 28 U.S.C. § 1332(a)(1) because the parties are completely diverse and the amount-in-controversy exceeds $75,000, excluding interest and cost.

21.    Venue is proper in this District Court pursuant this Court's Case Management Order ("CMO") No. 3. Plaintiffs state that but for the Order permitting direct filing in the United States District Court for the District of South Carolina, Plaintiffs would have filed this Complaint in the United States District Court for the Middle District of Alabama. In accordance with CMO 3, Plaintiff designates the United States District Court for Middle District of Alabama as the home venue.

22.    Venue is originally proper in the District Court pursuant to 28 U.S.C. § 1391 because it is the judicial district in which the Plaintiffs is a corporate citizen, a substantial part of the events or omissions giving rise to the claim occurred, and the Defendant's conduct business within the district.

## PARTIES

23.    Plaintiff City of Selma, Alabama, is an Alabama municipal corporation, who bring this action on behalf of itself and in its sovereign capacity, as a trustee, for the benefit of its citizens and natural resources, Plaintiffs bring this action to protect its own property, economic and environmental interest and to protect the health, safety, and welfare of its citizens.

24.     Plaintiff Water Works Board of the City of Selma, is a public corporation and water provider, existing under the laws of the State of Alabama. Plaintiff supplies water to customers in and around Selma, Alabama. Plaintiff has a property interest in the water it appropriates, treats, stores, and distributes to the public as well as in its piping, distribution system, and water treatment facilities.

25.     Defendants are designers, marketers, developers, manufacturers, distributors, releasers, instructors, promotors and sellers of PFAS-containing AFFF products or underlying PFAS containing chemicals used in AFFF production.  The Defendants, at all times relevant to this lawsuit, manufactured, designed, marketed, distributed, released, instructed, promoted and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various locations for use in fighting Class B fires such that each Defendant knew or should have known said products would be delivered to areas for active use during the course of training and firefighting activities.

26.     Defendant, 3M Company, f/k/a Minnesota Mining and Manufacturing Company, ("3M"), is a Delaware corporation and does business throughout the United States. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55133.

27.     3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

28.     Defendant AGC Chemicals Americas, Inc. ("ACG") is a Delaware corporation and does business throughout the United States. ACG has its principal place of business at 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania 19341.

29.     AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

30.     Defendant Amerex Corporation ("Amerex") is an Alabama corporation and does business throughout the United States. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173.

31.     Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

32.     Defendant Archroma U.S. Inc. ("Archroma") is a North Carolina company and does business throughout the United States. Archroma has its principal place of business at 5435 77 Center Drive, #10 Charlotte, North Carolina 28217. Upon information and belief, Archroma was

formed in 2013 as part of the acquisition of Clariant Corporation's Textile Chemicals, Paper Specialties and Emulsions business by SK Capital Partners.

33.    Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

34.    Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation and does business throughout the United States. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, assets of Arkema's fluorochemical business were purchased by Defendant Dupont in 2002.

35.    Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

36.    Defendant BASF Corporation ("BASF") is a Delaware corporation and does business throughout the United States. BASF has its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932.

37.     BASF designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

38.     Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation and does business throughout the United States. Buckeye has its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

39.     Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

40.     Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation and does business throughout the United States. Carrier has its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, Carrier was formed in 2020 and is the parent company of Kidde-Fenwal, Inc., a manufacturer of AFFF.

41.     Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF

containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

42.    Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation and does business throughout the United States. ChemDesign has its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143.

43.    ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

44.    Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does business throughout the United States. Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

45.    Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or

otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

46.    Defendant Chemicals, Inc. ("Chemicals") is a Texas corporation and does business throughout the United States. Chemicals has its principal place of business at 12321 Hatcherville Road, Baytown, Texas 77521.

47.    Chemicals designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

48.    Defendant Chemours Company FC, LLC ("Chemours FC"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899.  Chemours FC is a subsidiary of The Chemours Company.

49.    Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

50.    Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210.  Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

51.    Chubb Fire designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

52.    Defendant Clariant Corporation ("Clariant") is a New York corporation and does business throughout the United States. Clariant has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

53.    Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint.  Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

54.    Defendant Corteva, Inc. ("Corteva") is a Delaware Corporation that conducts business throughout the United States. Its principal place of business is Chestnut Run Plaza 735, Wilmington, Delaware 19805. Corteva is the successor-in-interest to Dupont Chemical Solutions Enterprise.

55.    Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

56.    Defendant Daikin America, Inc. ("Daikin") is a Delaware corporation and does business throughout the United States. Daikin has its principal place of business in Orangeburg, New York.

57.    Daikin designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

58.    Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation and does business throughout the United States. Deepwater's principal place of business is at 196122 E County Road 735, Woodward, Oklahoma 73801.

59.    Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

60.    Defendant Du Pont de Nemours Inc. (f/k/a DowDuPont, Inc.) ("DowDuPont"), is a Delaware corporation and does business throughout the United States. DowDuPont, has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDupont was created in 2015 to transfer Chemours and DuPont liabilities for manufacturing and distributing flurosurfactants to AFFF manufacturers.

61.    DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

62.    Defendant Dynax Corporation ("Dynax") is a New York corporation that conducts business throughout the United States. Its principal place of business is 103 Fairview Park Drive, Elmsford, New York, 10523-1544.

63.    Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

64.    Defendant E. I. du Pont de Nemours and Company ("DuPont"), is a Delaware corporation and does business throughout the United States. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

65.    DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

66.    Defendant Johnson Controls, Inc. ("Johnson Controls") is a Delaware corporation and does business throughout the United States. Johnson Controls has its principal place of business in Milwaukee Wisconsin.

67.    Johnson Controls designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials,

promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

68.    Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. Kidde P.L.C. has its principal place of business at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

69.    Kidde P.L.C. designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

70.    Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina company and does business throughout the United States. Nation Ford has its principal place of business at 2300 Banks Street, Fort Mill, South Carolina 29715.

71.    Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

17

72.    Defendant National Foam, Inc. ("National Foam") is a Delaware corporation and does business throughout the United States. National Foam has its principal place of business at 141 Junny Road, Angier, North Carolina, 27501.

73.    National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint.  Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

74.    Defendant Perimeter Solutions, LP ("Perimeter") is a Delaware corporation and does business throughout the United States. Perimeter has its principal place of business in Rancho Cucamonga, California.

75.    Perimeter designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

76.    Defendant the Chemours Company ("Chemours"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898. Upon information and belief, Chemours was spun off from DuPont in 2015 to assume PFAS related liabilities.

77.     Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

78.     Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company ("Tyco"), is a Delaware limited partnership and does business throughout the United States. Tyco has its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19466. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS.

79.     Tyco is the successor in interest to the corporation formerly known as The Ansul Company ("Ansul"). At all times relevant, Tyco/Ansul designed, marketed, developed, manufactured, distributed released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

80.     Defendant United Technologies Corporation ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

81.     United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

82.     Defendant UTC Fire & Security Americas Corporation, Inc.  (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation and does business throughout the United States. UTC has principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

83.     UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

84.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

85.    The term "Defendant" or "Defendants" refers to all Defendants named in this Complaint jointly and severally, unless otherwise stated.

86.    The term "Dupont Defendants" refers to the business entity defendants DuPont, New Dupont, DowDupont, Chemours FC, and Corteva.

## FACTUAL ALLEGATIONS

87.    Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish hydrocarbon fuel-based fire.

88.    AFFF-containing fluorinated surfactants have better firefighting capabilities than water due to their surfactant-tension lowering properties which allow the compound(s) to extinguish fire by smothering, ultimately starving it of oxygen.

89.    AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

90.    Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting, that were used by entities around the country, including military, county, and municipal firefighting departments.

91.    Defendants have each designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS, in such a way as to cause environmental and economic injuries, contamination and unlawful incursion onto the Plaintiff's land, surface and subsurface soil, sediment, natural resources, and municipal real property.

92.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and in other parts of the world. It contains PFAS, which are highly fluorinated synthetic chemical compounds whose family include PFOS and PFOA.

93.    PFAS are a family of chemical compounds containing fluorine and carbon atoms.

94.    PFAS have been used for decades in the manufacture of AFFF. The PFAS family of chemicals are entirely human-made and do not naturally occur or otherwise exist.

95.    Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in human blood.

## AFFF /PFAS HAZARDOUS EFFECTS

96.    AFFF and its components are associated with a wide variety of adverse health effects in humans.

97.    The United States Environmental Protection Agency ("USEPA") has issued interim Health Advisory Values for PFOA found in drinking water of 0.004 parts per trillion ("ppt"), and for PFOS found in drinking water of 0.02 ppt, as well as final health advisories for GenX chemicals found in drinking water of 10 ppt, and for PFBS found in drinking water of 2000 ppt.

98.    Exposure to Defendants' AFFF has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, liver cancer, testicular tumors, pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease, and infertility.

99.    By at least the end of the 1960s, animal toxicity testing performed by Defendants manufacturing and/or using PFAS indicated that exposure to such materials, including at least PFOA, resulted in various adverse health effects among multiple species of laboratory animals, including toxic effects to the liver, testes, adrenals, and other organs and bodily systems.

100.    By at least the end of the 1960s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that such materials, including at least PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

101.    By at least the end of the 1970s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that one or more such materials, including at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans exposed to such materials where such materials would remain and persist over long periods of time and would accumulate in the blood/body of the exposed individuals with each additional exposure.

102.    By at least the end of the 1980s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that at least one such PFAS, PFOA, had caused Leydig cell (testicular) tumors in a chronic cancer study in rats, resulting in at least one such Defendant, DuPont, classifying such PFAS internally as a confirmed animal carcinogen and possible human carcinogen.

103.    It was understood by Defendants by at least the end of the 1980s that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans unless the precise mechanism of action by which the tumors were caused was known and would not occur in humans.

104.    By at least the end of the 1980s, scientists had not determined the precise mechanism of action by which any PFAS caused tumors. Therefore, scientific principles of carcinogenesis classification mandated Defendants presume any such PFAS material that caused tumors in animal studies could present a potential cancer risk to exposed humans.

105.    By at least the end of the 1980s, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least DuPont, indicated that elevated incidence of certain cancers and other adverse health effects, including elevated liver enzymes and birth defects, had been observed among workers exposed to such materials, including at least PFOA, but such data was not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

106.    By at least the end of the 1980s, Defendants, including at least 3M and DuPont, understood that, not only did PFAS, including at least PFOA and PFOS, get into and persist and accumulate in the human blood and in the human body, but that once in the human body and blood, particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life. Meaning that it would take a very long time before even half of the material would start to be eliminated, which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposure continued.

107.    By at least the end of the 1990s, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

108.    By at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS caused each of the tumors found in animal studies had still not been identified, mandating that Defendants continue to presume that any such PFAS that caused such tumors in animal studies could present a potential cancer risk to exposed humans.

109.    By at least 2010, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health

impacts among workers exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

110.    When the USEPA and other state and local public health agencies and officials first began learning of PFAS exposure in the United States and potential associated adverse health effects, Defendants repeatedly assured and represented to such entities and the public that such exposure presented no risk of harm and were of no significance.

111.    After the USEPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, Defendants began manufacturing and/or using and/or began making and/or using more of certain other and/or "new" PFAS, including PFAS materials with six or fewer carbons, such as GenX (collectively "Short-Chain PFAS").

112.    Defendants manufacturing and/or using Short-Chain PFAS, including at least DuPont and 3M, are aware that one or more such Short-Chain PFAS materials also have been found in human blood.

113.    By at least the mid-2010s, Defendants, including at least DuPont and Chemours, were aware that at least one Short-Chain PFAS had been found to cause the same triad of tumors (Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a chronic rat cancer study with a non-Short-Chain PFAS.

114.    Research and testing performed by and/or on behalf of Defendants making and/or using Short-Chain PFAS indicates that such Short-Chain PFAS materials present the same, similar, and/or additional risks to human health as had been found in research on other PFAS materials, including cancer risk.

115.    Nevertheless, Defendants repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS, including Short-Chain PFAS, in

human blood at the levels found within the United States present no risk of harm and is of no legal, toxicological, or medical significance of any kind.

116.    At all relevant times, Defendants, individually and/or collectively, possessed the resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature that Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards Defendants deem acceptable.

117.    Even after an independent science panel, known as the "C8 Science Panel," publicly announced in the 2010s that human exposure to 0.05 parts per billion or more of one PFAS, PFOA, had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind, and have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate.

118.    At all relevant times, Defendants shared and/or should have shared among themselves all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS in human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

119.    As of the present date, blood serum testing and analysis by Defendants, independent scientific researchers, and/or government entities has confirmed that PFAS materials are clinically demonstrably present in approximately 99% of the current population of the United States.

120.    There is no naturally occurring "background," normal, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable in such blood as a direct and proximate result of the acts and/or omissions of Defendants.

121.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Plaintiffs from discovering the existence and extent of any injuries/harm as alleged herein.

122.    At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

123.    At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiffs to the legal, toxicological, medical, or other significance and/or risk from having any PFAS material in or on Plaintiffs' property.

124.    At all relevant times, Defendants encouraged the continued and even further increased use of PFAS by their customers and others, including but not limited to the manufacture, use, and release, of AFFF containing PFAS and/or emergency responder protection gear or equipment coated with materials made with or containing PFAS, and tried to encourage and foster the increased and further use of PFAS in connection  with  as  many products/uses/and applications as  possible,  despite  knowledge  of  the  toxicity,  persistence,  and  bioaccumulation  concerns associated with such activities.

125.    To this day, Defendants deny that the presence of any PFAS in human blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

126.    To this day, Defendants deny that any scientific study, research, testing, or other work of any kind has been performed that is sufficient to suggest to the public that the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical, or other significance.

127.    Defendants, to  this  day,  affirmatively  assert  and  represent  to  governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

128.    Defendants were and/or should  have  been  aware,  knew  and/or  should  have known, and/or foresaw or should have foreseen that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale

and/or other handling and/or use of AFFF containing PFAS would result in the contamination of the property of Plaintiffs with PFAS, and the biopersistence and bioaccumulation of such PFAS in property.

129.    Defendants were and /or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the property of Plaintiffs would cause injury and irreparable harm.

130.    Defendants did not seek or obtain permission or consent from Plaintiffs before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in Plaintiffs' property contamination to AFFF, and resulting biopersistence and bioaccumulation of such PFAS on Plaintiffs' property.

### DEFENDANTS' HISTORY OF MANUFACTURING AND SELLING AFFF

131.    3M began producing PFOS and PFOA by electrochemical fluorination in the 1940s.  In the 1960s, 3M used its fluorination process to develop AFFF.

132.    3M manufactured, marketed, and sold AFFF from the 1960s to the early 2000s.

133.    In 2000, 3M announced it was phasing out its manufacture of PFOS, PFOA, and related products, including AFFF. 3M, in its press release announcing the phase out, stated "our products are safe," and that 3M's decision was "based on [its] principles of responsible environment management."  3M further stated that "the presence of these materials at very low levels does not pose a human health or environmental risk."  In communications with the EPA at that time, 3M also stated that it had "concluded that…other business opportunities were more deserving of the company's energies and attention…"

134.    Following 3M's exit from the AFFF market, the remaining Defendants continued to manufacture and sell AFFF that contained PFAS and/or its precursors.

135.    Defendants knew their customers warehoused large stockpiles of AFFF. In fact, Defendants marketed their AFFF products by touting its shelf-life. Even after Defendants fully understood the toxicity of PFAS, and their impacts to the health of humans following exposure, Defendants concealed the true nature of PFAS. While Defendants phased out production or transitioned to other formulas, they did not instruct their customers that they should not use AFFF that contained PFAS and/or their precursors. Defendants further did not act to get their harmful products off the market.

136.    Defendants did not warn public entities, firefighter trainees who they knew would foreseeably come into contact with their AFFF products, or firefighters employed by either civilian and/or military employers that use of and/or exposure to Defendants' AFFF products containing PFAS and/or its precursors would pose a danger to human health

137.    The Plaintiffs were never informed that this product was inherently dangerous. Nor were the Plaintiffs warned about the known environmental contamination risks associated with this product.

138.    Defendants have known of the health hazards associated with AFFF and/or its compounds for decades and that in their intended and/or common use would cause environmental contamination.

139.    Information regarding AFFF and its compounds were readily accessible to each of the above-referenced Defendants for decades because each is an expert in the field of AFFF manufacturing and/or the materials needed to manufacture AFFF, and each has detailed information and understanding about the chemical compounds that form AFFF products.

140.    The AFFF Defendants through their manufacturing, distribution and/or sale of AFFF, and through their involvement and/or participation in the creation of training and instructional

materials and activities, knew, foresaw, and/or should have known and/or foreseen that the Plaintiffs and those similarly situated would be harmed.

141.    The AFFF Defendants' products were unreasonably dangerous and the Defendants failed to warn of this danger.

### AFFECTED NATURAL RESOURCES

142.    PFOS and PFOA attributable to AFFF have contaminated the City's municipal real property, sediment, surface and subsurface soil, biota, drinking water, and other natural resources at municipal sites and facilities where AFFF was transported, stored, used, handled, released, spilled, or disposed of for decades. Further AFFF-related contamination of the City's economic natural resources will be uncovered as investigation continues.

143.    These contaminated lands and natural resources have inherent value for the City and its residents. Sediments and soils are a critical component of the City's overall ecological resources.

144.    Sediments and soils can sustain a wide diversity of plants and animals that are essential to a healthy ecosystem. They provide a living substrate for submerged and emerged flora and support diverse invertebrate species, wading birds, fish, and shellfish populations.

145.    Sediments and soils serve as a long-term reservoir of PFAS, where PFAS are stored and released over time, impacting biota and increasing PFAS concentrations in fish tissue and wildlife. Investigations of AFFF-related contamination in sediments and soils in the City is ongoing.

146.    Biota, including the flora and fauna of the City are critical ecological resources. The City's biodiversity provides a wealth of ecological, social, and economic goods and services that are an integral part of the ecological infrastructure for all cultural and economic activity in Selma.

147.    Contamination from the discharge of hazardous substances and pollutants is one of the major causes of biodiversity loss.

148.    Natural resource injuries to biota in the City negatively impact not only the individual species directly involved, but the capacity of the injured ecosystems to regenerate and sustain such life into the future.

149.    Investigation of AFFF-related contamination in biota on municipal lands is ongoing.

### **IMPACT OF PFOA AND PFOS ON PLAINTIFFS' WATER SUPPLY**

150.    PFAS has been detected in varying amounts at varying times in Plaintiffs' drinking water. PFOA, PFOS, PFBS, PFHxA, and PFPeA have been detected and/or are present in Plaintiffs' drinking water, as well as in basins that supply Plaintiffs' drinking water, at levels above the federally advised Health Advisory Levels.

151.    The detection and/or presence of PFAS, and the threat of further detection and/or presence of PFAS in Plaintiff's water supply in varying amounts and at varying times has resulted, and will continue to result, in damage to Plaintiffs.

152.    Drinking water for the City of Selma is supplied by the Water Works Board of the City of Selma.

153.    The contamination of Plaintiff's basins with PFOA, PFOS, and additional PFAS is continuing as new contamination periodically flows into the basins.

154.    Investigation of AFFF-related contamination in Plaintiffs' water supply is ongoing.

155.    PFAS have characteristics that have resulted in their extensive and persistent contamination of Plaintiffs' property.

156.    PFAS – including PFOA and PFOS – can persist in an environment indefinitely due to their multiple fluorine-carbon bonds, which are exceptionally strong and stable. These bonds are resistant to metabolic and environmental degradation processes.

157.    PFAS – including PFOA and PFOS – are toxic. These compounds can cause adverse impacts to not only the environment, but also to animal and human health.

## COUNT I- NEGLIGENCE

158.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

159.    As commercial distributors, sellers, manufacturers, suppliers, marketers and/or designers of fluorinated AFFF, Defendants owed a duty of care to Plaintiffs not to place into the stream of commerce a defective product that was in a defective condition and unreasonable dangerous to purchasers, end users and the Plaintiffs' economic and environmental resources.

160.    Defendants breached their duty by negligently designing, formulating, manufacturing, distributing, selling, supplying and/or marketing such an unreasonably dangerous product into the stream of commerce, including for use by municipal, county or state fire authorities, even when they knew or should have known of the dangers PFAS posed to the Plaintiffs' economic and environmental resources.

161.    Among other things, Defendants breached their duty when they manufactured, marketed, distributed, supplied, and sold fluorinated AFFF even though they knew or should have known the dangers that PFAS posed to natural resources. Defendants should have known that the manner in which they were manufacturing, marketing and selling AFFF containing PFAS compounds would result in the contamination of the Plaintiffs' property.

162.    Defendants knew or should have known that exposure to PFAS is hazardous to the environment and to human and animal health.

163.     As a direct and proximate result of Defendant's acts or omissions as alleged in this

Complaint, Plaintiffs have incurred, is incurring, and will continue to incur substantial economic

damages related to the release of fluorinated PFAS containing AFFF in amounts to be provided

at trial.

164.     Defendants knew it was substantially certain that their acts or omissions described above

would cause injury and damage, including PFAS contamination of the Plaintiffs' property.

Defendants committed each of the above-described acts or omissions knowingly, willfully and

with oppression, fraud and/or malice. Such conduct was performed to promote the sales of

AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its

reasonably foreseeable impacts on the public health and welfare. Therefore, Plaintiffs request an

award of punitive damages in an amount sufficient to punish these Defendants and that fairly

reflects the aggravating circumstances alleged herein.

165.     Defendants are jointly and severally liable for all such damages, and Plaintiffs are entitled

to recover all such damages and other relief as set forth below.

166.     Plaintiff prays for a judgment against the Defendants for actual, compensatory,

consequential, and punitive damages, together with the costs of this action, and for such other

and further relief as this Court may deem fit.

## COUNT II – PUBLIC NUISANCE

167.     Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding

paragraphs as if fully restated herein.

168.     Because The City of Selma is a public entity and WWBS operates a public water supply,

municipal lands and natural resources are public and commonly held resources for the benefit of

its citizens. Members of the public have a right to have their lands natural resources free of Defendant's toxic contamination.

169.    Defendants' acts and omissions, including their manufacture, sale, supply, marketing, and defective design of, and/or failure to warn regarding PFAS in fluorinated AFFF products constitutes a serious and ongoing hazard to public health.

170.    Consequently, Defendants substantially interfered with and caused damages to public or common resources that endanger municipal property, as well as the health, safety, and welfare of its citizens. Such action creates, contributes to, or maintains a public nuisance.

171.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFAS contamination of the Plaintiffs' property. Defendants committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud and/or malice. Such conduct was performed to promote sales of fluorinated AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiffs request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

172.    Defendants are jointly and severally liable for all such damages, and Plaintiffs are entitled to recover all such damages and other relief as set forth below.

173.    Plaintiffs pray for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT III – PRIVATE NUISANCE

174.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

175.    The City of Selma is the owner of contaminated real property within the City of Selma.

176.    The groundwater that supplies WWBS basins has been contaminated by PFAS as a direct and proximate result of the conduct of Defendants.

177.    Defendants' intentional, negligent, and/or reckless conduct, as alleged herein, has resulted in substantial toxic PFAS contamination to Plaintiffs' property, lands, or facilities causing injuries to the Plaintiffs' economic, environmental and ecological interest.

178.    Defendants' manufacture, distribution, sale, supply, and marketing of fluorinated PFAS containing AFFF was unreasonable because Defendants had knowledge of PFAS unique and dangerous chemical properties and knew that contamination of municipal lands and natural resources was substantially certain to occur, but failed to provide adequate warning of, or take any precautionary measures to mitigate, those hazards.

179.    The toxic PFAS contamination of Plaintiffs' property caused, contributed to, and or maintained by Defendants substantially and unreasonably interferes with Plaintiffs' property rights and with the use and enjoyment of economic and natural resources.

180.    Each Defendant has caused, contributed to, and/or maintained such nuisance, and is a substantial contributor to such nuisance.

181.    As a direct and proximate result of Defendant's acts and omissions as alleged herein, Plaintiffs have incurred, are incurring, and will continue to incur economic damages related to toxic PFAS contamination of Plaintiffs' property in an amount to be proven at trial.

182.    Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination of Plaintiffs' property.

Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice. Such conduct was performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public health and welfare. Therefore, Plaintiffs request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

183.    Defendants are jointly and severally liable for all such damages, and Plaintiffs are entitled to recover all such damages and other relief as set forth below.

184.    Plaintiffs pray for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT IV – TRESPASS

185.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

186.    The City of Selma is the owner of contaminated real property within the City of Selma.

187.    The groundwater that supplies WWBS basins has been contaminated by PFAS as a direct and proximate result of the conduct of Defendants.

188.    Plaintiffs did not give any Defendant permission to cause PFAS to enter onto Plaintiffs' property.

189.    Defendants' knew or should have known that:

    a.  PFAS have a propensity to infiltrate soils, sediments biota and other vital natural resources when released into the environment;

    b.  PFAS are mobile and persistent compounds capable of moving substantial distances through aquifers, soil and sediments;

    c.   PFAS compounds are toxic to human and animal health; and

    d.   PFAS compounds are therefore hazardous to public health and welfare and likely to cause ecological and economic injuries when released into the environment.

190.    Defendants manufactured, promoted, marketed, distributed, and/or sold AFFF containing PFAS, which Defendants knew or reasonably should have known would certainly be discharged and release toxic PFAS into the ground and intrude upon, contaminate, and damage the Plaintiffs' property rights and possessory interest.

191.    Defendants willful conduct directly resulted in the placement of its product, AFFF, on and in property owned by the Plaintiffs' without permission or right of entry.

192.    Each Defendant is a substantial factor in bringing about the contamination of the Plaintiffs' real property; and each Defendant aided and abetted the trespasses and is jointly and severally liable for the injuries and damages caused to the Plaintiffs.

193.    As a direct and proximate result of Defendant's acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur economic damages related to toxic PFAS contamination of the Plaintiffs' real property and facilities in an amount to be proven at trial.

194.    Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination of the Plaintiffs' municipal property. Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice. Such conduct was performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public health and welfare. Therefore, Plaintiffs request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

195.    Defendants are jointly and severally liable for all such damages, and Plaintiffs are entitled to recover all such damages and other relief as set forth below.

196.    Plaintiffs pray for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT V – DEFECTIVE DESIGN

197.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

198.    Defendant's AFFF was defective in design or formulation in a manner that rendered the products unreasonably dangerous to purchasers and end users of AFFF.

199.    As commercial designers, manufactures, distributors, suppliers, sellers and or marketers of AFFF containing PFAS, Defendants has a strict duty not to place into the stream of commerce a product that is defective or unreasonably dangerous.

200.    Defendants knew that third parties would purchase AFFF containing PFAS and use it without inspection for defects.

201.    At the time of manufacture, Defendants knew that the chosen formulation of AFFF was not biodegradable and bioaccumulated in property, fish, wildlife, and humans.

202.    AFFF containing PFAS purchased or otherwise acquired (directly or indirectly) from Defendants by third parties were applied, discharged, disposed of, or otherwise released onto the Plaintiffs' property and lands at various locations over time and in various amounts.

203.    The AFFF containing PFAS purchased by third parties was used in a foreseeable manner and without substantial change in the condition of such products.

204.     Defendants knew, or reasonably should have known, that the use of AFFF containing PFAS in its intended manner would foreseeably result in the spillage, discharge, disposal, or release of AFFF onto Plaintiffs' property.

205.     The AFFF containing PFAS released onto Plaintiffs' property was defective in design and unreasonably dangerous because, among other things:

      a.  PFAS have a propensity to infiltrate soils, sediments biota and other vital natural resources when released into the environment;

      b.  PFAS are mobile and persistent compounds capable of moving substantial distances through aquifers, soil and sediments;

      c.  PFAS compounds are toxic to human and animal health; and

      d.  PFAS compounds are therefore hazardous to public health and welfare and likely to cause ecological and economic injuries when released into the environment.

206.     Defendants manufactured, promoted, marketed, distributed, and/or sold AFFF containing PFAS, which Defendants knew or reasonably should have known would certainly be discharged and release toxic PFAS into the ground and intrude upon, contaminate, and damage Plaintiffs' property rights and possessory interest.

207.     Defendants' willful conduct directly resulted in the placement of its product, AFFF, on and in property owned by Plaintiffs without permission or right of entry.

208.     Each Defendant is a substantial factor in bringing about the contamination of the Plaintiffs' property; and each Defendant aided and abetted the trespasses and is jointly and severally liable for the injuries and damages caused to the Plaintiffs.

209.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiffs have incurred, are incurring, and will continue to incur economic damages related to toxic PFAS contamination of Plaintiffs' lands and facilities in an amount to be proven at trial.

210.    Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination of Plaintiffs' property. Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice. Such conduct was performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public health and welfare. Therefore, Plaintiffs request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

211.    Defendants are jointly and severally liable for all such damages, and Plaintiffs are entitled to recover all such damages and other relief as set forth below.

212.    Plaintiffs pray for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT VI – STRICT LIABILITY – DEFECTIVE PRODUCT

213.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

214.    Defendant's AFFF was defective in design or formulation in a manner that rendered the products unreasonably dangerous to purchasers and end users of AFFF.

215.    As commercial designers, manufactures, distributors, suppliers, sellers and or marketers of AFFF containing PFAS, Defendants have a strict duty not to place into the stream of commerce a product that is defective or unreasonably dangerous.

216.    Defendants knew that third parties would purchase AFFF containing PFAS and use it without inspection for defects.

217.     At the time of manufacture, Defendants knew that the chosen formulation of AFFF was not biodegradable and bioaccumulated in property, fish, wildlife, and humans.

218.     AFFF containing PFAS purchased or otherwise acquired (directly or indirectly) from Defendants by third parties were applied, discharged, disposed of, or otherwise released onto Plaintiffs' lands and property at various locations over time and in various amounts.

219.     The AFFF containing PFAS purchased by third parties was used in a foreseeable manner and without substantial change in the condition of such products.

220.     Defendants knew, or reasonably should have known, that the use of AFFF containing PFAS in its intended manner would foreseeably result in the spillage, discharge, disposal, or release of AFFF onto Plaintiffs' property.

221.     The AFFF containing PFAS released onto the Plaintiffs' property was defective in design and unreasonably dangerous because, among other things:

      a.  PFAS causes extensive and persistent contamination even when products containing it are used in their foreseeable and intended manner.

      b.  PFAS contamination poses significant threats to public health and welfare.

      c.  Defendants failed to conduct and/or failed to disclose reasonable, appropriate, or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of PFAS.

222.     At all times relevant to this action, AFFF containing PFAS was dangerous to an extent beyond that which would be contemplated by the ordinary consumer, and/or the foreseeable risk of harm to public health and welfare posed by PFAS outweighed the cost to Defendants of reducing or eliminating such risk.

223.     Defendants knew or should have known about feasible alternatives to producing AFFF without the use of PFAS, and the omission of such alternative designs rendered AFFF not reasonably safe.

224.    As a direct and proximate result of the defects previously described, Plaintiffs' property has been, and continues to be, contaminated with PFAS in varying amounts over time, causing Plaintiffs significant injury and damage.

225.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiffs have incurred, are incurring, and will continue to incur damages related to PFAS contamination of its property.

226.    Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination of the Plaintiffs' property.

227.    Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice. Such conduct was performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public health and welfare. Therefore, Plaintiffs request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

228.    Defendants are jointly and severally liable for all such damages, and Plaintiffs are entitled to recover all such damages and other relief as set forth below.

229.    Plaintiffs pray for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT VII STRICT LIABILITY – FAILURE TO WARN

230.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

231.    As commercial distributors, sellers, manufacturers, suppliers, marketers and/or designers of AFFF, Defendants had a strict duty to warn against latent dangers resulting from foreseeable uses of the product that Defendants knew or should have known about.

232.    At the time of marketing, when the AFFF left control of the Defendants, Defendants knew, or in the exercise of reasonable care, should have known that the AFFF was not biodegradable, and that it bioaccumulated in fish, wildlife and humans, and knew they were providing an inadequate warning or instruction about the inherent danger of allowing the AFFF to be released into the environment.

233.    Defendants knew that third parties would purchase AFFF containing PFAS and expect that it was biodegradable and use it at fire training facilities and during live fire operations where runoff would permeate Plaintiffs' land and natural resources.

234.    AFFF containing PFAS purchased or otherwise acquired (directly or indirectly) from Defendants by third parties was applied, discharged, disposed of, or otherwise released at various locations, at various times, and in various amounts onto the Plaintiffs' land and natural resources.

235.    The AFFF containing PFAS purchased by third parties was used in a reasonably foreseeable manner and without substantial change in the condition of such products.

236.    Defendants knew or should have known that the use of AFFF containing PFAS in its intended manner would result in the discharge, disposal, or release of PFAS onto Plaintiffs' land and natural resources.

237.    The AFFF containing PFAS used in the vicinity of fire training areas on and around Plaintiffs' land was defective in design and unreasonably dangerous for the reasons set forth above.

238.    Despite the known and/or reasonably foreseeable hazards to property and human health and welfare associated with the use of AFFF containing PFAS the Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

239.    In particular, the Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their AFFF products containing PFAS.

240.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiffs have incurred, is incurring, and will continue to incur substantial economic and environmental damages related to PFAS contamination in an amount to be proved at trial.

241.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFAS contamination of Plaintiffs' land and natural resources.

242.    Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiffs request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

243.    Defendants are strictly, jointly and severally liable for all such damages, and Plaintiffs are entitled to recover all such damages and other relief as set forth below

244.    Plaintiffs pray for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

245.    Plaintiffs pray for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT VIII – BREACH OF EXPRESS AND IMPLIED WARRANTIES

246.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

247.    At all times relevant hereto, the Defendants manufactured, marketed, labeled, and sold the AFFF products that has been previously alleged and described herein.

248.    At the time the Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, the Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the product was merchantable, safe, and fit for its intended purpose.

249.    The Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe. These warranties were breached, and such breach proximately resulted in the injuries and damages suffered by the Plaintiffs.

250.    The Plaintiffs are within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

251.    The Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the product when used for its intended use and was neither of merchantable quality nor safe for its intended use in that the product has a propensity to cause serious injury, pain, and cancer.

252.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur substantial economic and environmental damages related to PFAS contamination in an amount to be proved at trial.

253.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFAS contamination of Plaintiffs' land.

254.    Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiffs request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

255.    Defendants are strictly, jointly and severally liable for all such damages, and Plaintiffs are entitled to recover all such damages and other relief as set forth below

256.    Plaintiffs pray for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT IX – FRAUDULENT CONCEALMENT

257.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

258.    Throughout the relevant time period, Defendants knew that their products were defective and unreasonably unsafe for their intended purpose.

259.    Defendants fraudulently concealed from and/or failed to disclose to or warn the Plaintiffs, and the public that their products were defective, unsafe, and unfit for the purposes intended, and that they were not of merchantable quality.

260.    Defendants were under a duty to the Plaintiffs and the public to disclose and warn of the defective and harmful nature of the products because:

      a.    Defendants were in a superior position to know the true quality, safety and efficacy of the Defendants' products;

      b.    Defendants knowingly made false claims about the safety and quality of the Defendants' product in documents and marketing materials; and

      c.    Defendants fraudulently and affirmatively concealed the defective nature of the Defendants' products from the Plaintiffs.

261.    The facts concealed and/or not disclosed by Defendants to the Plaintiffs were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use the Defendants' products.

262.    Defendants intentionally concealed and/or failed to disclose the true defective nature of the products so that the Plaintiffs would use the Defendants' products, the Plaintiffs justifiably acted or relied upon, to Plaintiffs' detriment, the concealed and/or non-disclosed facts as evidenced by Plaintiffs' use of the Defendants' products.

263.    Defendants, by concealment or other action, intentionally prevented the Plaintiffs from acquiring material information regarding the lack of safety and effectiveness of the Defendants' products and are subject to the same liability to the Plaintiffs for Plaintiffs' pecuniary losses, as though Defendants had stated the non-existence of such material information regarding the Defendants' products' lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non-existence of such matters that the Plaintiffs were thus prevented from discovering the truth. Defendants therefore have liability for fraudulent

concealment under all applicable laws, including, inter alia, Restatement (Second) of Torts §550 (1977).

264.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur substantial economic and environmental damages related to PFAS contamination in an amount to be proved at trial.

265.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFAS contamination of Plaintiffs' lands and natural resources.

266.    Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiffs request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

267.    Defendants are strictly, jointly and severally liable for all such damages, and Plaintiffs are entitled to recover all such damages and other relief as set forth below.

268.    Plaintiffs prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## <u>COUNT X - WANTONESS</u>

269.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

270.    Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF products, including Plaintiff.

271.    Defendants breached the duty of care owed to the Plaintiff.

272.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the property and safety of the end users of Defendants' AFFF products, including Plaintiff.

273.    As a proximate and foreseeable consequent of the actions of Defendants, Plaintiff's property was contaminated by an unreasonably dangerous toxic PFAS containing AFFF, which caused Plaintiff's property injury.

274.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur substantial economic and environmental damages related to PFAS contamination in an amount to be proved at trial.

275.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFAS contamination of Plaintiffs' land and natural resources.

276.    Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiffs request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

277.    Defendants are strictly, jointly and severally liable for all such damages, and Plaintiffs are entitled to recover all such damages and other relief as set forth below

278.    Plaintiffs pray for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT XI – FRAUDULENT TRANSFER, 6 DEL. C. § 1304

## (DUPONT DEFENDANTS)

279.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

280.    Under Delaware Code Title 6, § 1304:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

b Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

281.    The Plaintiffs are "Creditors" possessing "Claims" against the DuPont Defendants as those terms are defined in Delaware Code Title 6, § 1301.

282.    The DuPont Defendants have acted with actual intent to hinder, delay, and defraud DuPont's creditors.

283.    Assets and liabilities were transferred between the DuPont Defendants, whereby certain DuPont Defendants did not receive a reasonably equivalent value in exchange for the transfer and they were engaged in or about to engage in a business for which the remaining assets were

unreasonably small and/or they intended to incur or reasonably should have believed that they would incur debts beyond their ability to pay as the debts became due.

284.    On information and belief, the DuPont Defendants engaged in a complicated restructuring of DuPont for the purpose of shielding assets from creditors such as the Plaintiff, with claims related to PFAS contamination.

285.    On information and belief, at the time of this restructuring, DuPont knew that its liabilities related to PFAS were likely in the billions of dollars.

286.    In the initial step of restructuring, DuPont formed Chemours in 2015 as a wholly owned subsidiary. In July 2015, DuPont spun off Chemours, transferring DuPont's Performance Chemicals Unit along with a vast amount of environmental liabilities – including all those related to PFAS. As part of the transfer, Chemours transferred valuable assets to DuPont, including a $3.9 billion dividend to DuPont stockholders, for which Chemours incurred additional debt to pay.

287.    On information and belief, the Chemours spin-off was not bargained at arm's length. At the time of the spin off, Chemours had a separate board, but was controlled by DuPont employees.

288.    On information and belief, DuPont transferred to Chemours a disproportionately small allocation of assets to cover debts and liabilities. Dupont transferred less than 20% of its business line, but over 66% of its environmental liabilities and 90% of DuPont's pending litigation. These liabilities were taken on by Chemours in addition to the $3.9 billion in debt it assumed to pay a dividend to DuPont's shareholders. As a result, Chemours did not receive reasonably equivalent value in exchange for the transfer of debts and obligations from DuPont.

289.    In its valuation, DuPont purposefully undervalued the potential maximum liability from the PFAS liabilities it transferred to Chemours. At the time of the spin-off, DuPont had been sued threatened with lawsuits, and had knowledge of forthcoming litigation regarding DuPont's liabilities for damages and injuries from the manufacture, sale, and worldwide use of PFAS-containing products. DuPont and Chemours knew or should have known that Chemours would incur debts beyond its ability to pay as they came due.

290.    In further restructuring, DuPont sought to further protect its assets from PFAS liabilities by first merging itself with Dow and then separating its now comingled assets among three newly created companies: DowDuPont, Inc. ("DowDuPont") (which later became New DuPont); Dow, Inc. ("New Dow"), and Corteva.

291.    As a result of the merger, Dow and DuPont became wholly owned subsidiaries of DowDupont. On information and belief, after the merger, DowDupont underwent a hidden internal reorganization with the net effect being the transfer of a substantial portion of its valuable assets to DowDupont for less than the assets were worth. On information and belief, the transactions were intended to frustrate and hinder creditors with claims against DuPont, including with respect to PFAS liabilities.

292.    As a result of this internal organization, all of Dow and DuPont's assets were reshuffled into three divisions: the Agriculture Business, the Specialty Products Business, and the Material Sciences Business.

293.    On June 1, 2019, the DuPont Defendants completed the final step of the restructuring by spinning off two newly publicly traded entities, Corteva and New Dow. Generally, the assets related to the Agriculture Business division were allocated to Corteva; assets related to the Material Science Business were allocated to New Dow; and the assets related to the Specialty

Products Business remained with DowDupont, which then became New DuPont. DuPont became a wholly owned subsidiary of Corteva.

294.    On information and belief, Corteva and New DuPont assumed responsibility for some of DuPont's historic PFAS liabilities.

295.    On information and belief, during the restructuring, DuPont's assets were transferred to Corteva and New DuPont for far less than their actual value. At the end of these transactions, DuPont divested approximately half of its tangible assets, totaling roughly $20 billion.

296.    The net result of the restructuring was to move DuPont's extensive PFAS liabilities to an underfunded company, Chemours, and to further shield DuPont's extensive assets by merging them with Dow's assets and then transferring them to Corteva and New DuPont for far less than their value.

297.    Plaintiff has been harmed by these transactions, which were designed to shield assets from creditors such as PRASA which have been damaged by DuPont's conduct.

298.    Plaintiffs' are entitled to void these transactions and to recover property or value transferred under 6 Del. C. § 1307.


## TOLLING OF THE STATUTE OF LIMITATIONS
### Discovery Rule Tolling

299.    Plaintiffs had no way of knowing about the risk of property damage associated with the use of and exposure to AFFF until very recently.

300.    Within the time period of any applicable statute of limitations, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to property and can cause widespread contamination.

301.    Plaintiffs did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF; nor would a reasonable and diligent investigation by Plaintiffs have disclosed that AFFF could cause property damage.

302.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

**Fraudulent Concealment Tolling**

303.    All applicable statute of limitations have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

304.    Instead of disclosing critical information regarding AFFF, Defendants have consistently and falsely represented that their AFFF products do not contaminate the environment.

305.    This fraudulent concealment continues through present day.

306.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

307.    Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Plaintiffs, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to AFFF.

308.    Instead, Defendants knowingly, affirmatively, and actively concealed information concerning AFFF and the serious risks associated with the use of AFFF.

309.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly and severally, on each of the above-referenced claims and Causes of Action as follows:

Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited, remediation costs to remove contaminated soil and property, testing costs to determine the extent of PFAS contamination on Plaintiffs' property, inspection cost associated with testing and remediation, and any other compensatory damages authorized by law, together with interest and costs as provided by law;

Punitive and/or exemplary damages for the wanton, willful, fraudulent, and/or reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the property rights of the Plaintiffs and of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

Costs of testing of property and additional monitoring to determine the potential presence on PFAS compounds;

Awarding Plaintiff attorneys' fees;

Awarding Plaintiff the costs of these proceedings; and

Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

The Plaintiff hereby demands a trial by jury.

**ENVIRONMENTAL LITIGATION GROUP, P.C.**

*/s/ Gregory A. Cade*
Gregory A. Cade
Gary A. Anderson

Kevin B. McKie
ENVIRONMENTAL LITIGATION GROUP, P.C.
2160 Highland Avenue South
Birmingham, AL 35205
Telephone: 205-328-9200
Facsimile: 205-328-9456

**THE KUYKENDALL GROUP, LLC**

Frederick T. Kuykendall III
*/s/ Frederick T. Kuykendall, III*
Alabama Bar No. 4462-A59F
The Kuykendall Group, LLC
201 East 2nd Street
Bay Minette, Al 36507
ftk@thekuykendallgroup.com
(205) 252 6127

**PILCHER & GRISSOM, LLC**

*/s/ Thomas Pilcher*
Pilcher & Grissom, LLC
116 Lauderdale Street
Selma, Alabama 36701
(334) 431-5306